UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:12-CV-00060-TBR
(CONSOLIDATED WITH NO. 1:12-CV-00062-TBR)

ROGER L. CORY, *et al.*                                                    Appellants

v.

ROBERT W. LEASURE, Trustee, *et al.*                          Appellees

## OPINION

This is a consolidation of two appeals from the United States Bankruptcy Court for the Western District of Kentucky (Bankruptcy Court) in relation to the approval of a settlement agreement (Settlement Agreement) between the bankruptcy trustee and a group of fifteen plaintiffs collectively referred to as the "Bennett Plaintiffs."[1]  The first is the appeal of an order approving the Settlement Agreement, and the second is the appeal of entry of the agreed judgment (Agreed Judgment) provided for in the Settlement Agreement.

Robert Leasure is the court-appointed Chapter 11 trustee (Trustee) for the debtors in the bankruptcy proceedings below, Mammoth Resource Partners, Inc. (MRP), Mammoth Field Services, Inc., and Mammoth Resource, LLC (collectively "Debtors"). The Appellants are Roger Cory and Daniel Northcutt, who collectively own one-

---

[1] The "Bennett Plaintiffs" include Paul Daniel Bennett; Chris Endersby; Excellent Properties, LLC; Peniel Enterprises, Inc.; Richard A. Persson; Andrew V. Podray; R&S Ogee Ventures, LLC; Calvin L. Ryberg; H. Carl Ryberg; Carol Jean Glenn Ryberg; Mark and Christy Siebert; Jeff Wilson; and 2R Ogee Ventures, LLC.

hundred percent of the stock of the Debtors.  The Appellees are the Trustee and the Bennett Plaintiffs.

BACKGROUND

On October 2, 2007, the Bennett Plaintiffs filed suit in the United States District Court for the Western District of Kentucky, Bowling Green Division, styled *Paul Daniel Bennett, et al. v. Mammoth Resource Partners, Inc., et al.*, No. 1:07-CV-168-JHM (Bennett Lawsuit[2]), against the Debtors, Cory, and eight partnerships[3] managed by MRP.  The Bennett Plaintiffs alleged sixteen causes of action, including violations of the Securities Act of 1933, violations of the Securities Exchange Act of 1934, violations of the Kentucky Securities Act, Fraud, Breach of Fiduciary Duty, and Breach of Contract.  The Bennett Plaintiffs also alleged that Cory was a "controlling person" of other defendants under the Securities Act of 1933 and the Kentucky Securities Act.  *See id.*, Docket No. 1.

On September 8, 2010, the Debtors filed Chapter 11 bankruptcy petitions in the Bankruptcy Court.[4]  After the bankruptcy petitions were filed, the District Court

---

[2] The Appellants refer to this action as the "Bennett Lawsuit."  (Docket No. 8, at 6.)  The Appellees refer to this action as the "Securities Fraud Action."  (Docket No. 9, at 8.)  For purposes of this Opinion, the Court will refer to civil action No. 1:07-CV-168-JHM, which subsequently was referred to the Bankruptcy Court and docketed as adversary proceeding No. 10-1055, as the "Bennett Lawsuit."

[3] These include Mammoth Discovery Working Interest; Mammoth Reveal, Ltd.; Mammoth Reserve, Ltd.; Mammoth Opportunity, Ltd.; Mammoth Advantage, Ltd.; Mammoth Prosperity, Ltd.; Mammoth Exclusive, Ltd.; and Mammoth Conversion, Ltd.

[4] The associated case numbers for each Debtor are as follows: MRP, No. 10-11377; Mammoth Resource, LLC, No. 10-11380; and Mammoth Field Services, Inc., No. 10-11378.  On September 9, 2010 these cases were consolidated under MRP's petition, No. 10-11377, for procedural purposes and joint administration.  *In re Mammoth Resource Partners, Inc.*, No. 10-11377 (Bankr. W.D. Ky.), Docket Nos. 6 & 7.

referred the Bennett Lawsuit to the Bankruptcy Court on October 28, 2010.  *Id.*, Docket No. 122.   The Bankruptcy Court subsequently docketed that case as adversary proceeding No. 10-1055.   *Paul Daniel Bennett, et al. v. Mammoth Resource Partners, Inc.*, No. 10-1055 (Bankr. W.D. Ky.), Docket No. 1.

On February 17, 2011, the Bennett Plaintiffs moved the Bankruptcy Court to dismiss the Chapter 11 case or, alternatively, to appoint a Chapter 11 trustee to manage and operate the Debtors' affairs.   *In re Mammoth Resource Partners, Inc.*, No. 10-11377, Docket No. 128.  The Bankruptcy Court conducted a hearing over several days during which the court heard testimony regarding the Debtors' financial reporting, the Debtors' assets and liabilities, Cory and Northcutt's management of the Debtors, and the claims asserted in the Bennett Lawsuit.  *See id.*, Docket No. 239.  On May 27, 2011, the Bankruptcy Court ordered the appointment of a Chapter 11 trustee to administer the Debtors' estates, *id.*, and on June 10, 2011, granted the United States Trustee's motion to appoint Leasure as trustee, *id.*, Docket Nos. 243; 245.

During the course of the bankruptcy case, the Bennett Plaintiffs twice moved for summary judgment in the adversary proceeding before the Bankruptcy Court.  *See Bennett*, No. 10-1055, Docket Nos. 3; 32.  The Bankruptcy Court denied the Bennett Plaintiffs' first motion on August 30, 2011.  *Id.*, Docket No. 24.  Before briefing was complete on the Bennett Plaintiffs' second motion for summary judgment, the Bennett Plaintiffs and the Trustee agreed to the terms of the Settlement Agreement.

On January 26, 2012, the Trustee filed a motion to approve the Settlement Agreement.  *In re Mammoth Resource Partners, Inc.*, No. 10-11377, Docket No. 415.

The Settlement Agreement resolved the disputes between the Trustee and the Bennett Plaintiffs as to the allowance and amount of the Bennett Plaintiffs' claims, whether their claims would be subordinated, and the Debtors' estates' involvement in the Bennett Lawsuit. *See id.*, Docket No. 415-1. The Settlement Agreement specifically provided that the Trustee consent to the Agreed Judgment[5] in favor of the Bennett Plaintiffs against MRP in the Bennett Lawsuit and also that the Bennett Plaintiffs dismiss their claims against the remaining defendants other than Cory. *Id.* at 4-5, ¶¶ 2-3.

On January 30, 2012, the Bankruptcy Court set a deadline of February 21, 2012, for parties to object to the Trustee's motion to approve the Settlement Agreement. *Id.*, Docket No. 417. On February 5, the Trustee and the Bennett Plaintiffs filed a joint motion to schedule a hearing on the Trustee's motion for February 27, 2012. *Id.*, Docket No. 422. Cory and Northcutt filed a response to the Trustee's motion on February 6, objecting to approval of the Settlement Agreement and requesting that if a hearing was scheduled for February 27 that it "be held for the purpose of scheduling and other preliminary matters." *Id.*, Docket No. 423, at 1. Cory and Northcutt tendered with their response a proposed order that included the language: "IT IS HEREBY ORDERED that this matter be scheduled for *preliminary* hearing on . . . ." *Id.*, Docket No. 423-1, at 1 (emphasis added). The Bankruptcy Court entered Cory and Northcutt's proposed order on February 7 setting the hearing for February 27. Cory and Northcutt then filed their formal objections to the Trustee's motion to approve the Settlement Agreement on February 21. *Id.*, Docket No. 430. Cory and Northcutt argued that the

---

[5] The Agreed Judgment is attached as an exhibit to the Settlement Agreement. *See In re Mammoth Resource Partners, Inc.*, No. 10-11377, Docket No. 415-1, at 9-13.

Settlement Agreement should not be approved because the Trustee had neither shown that the proposed settlement was fair and equitable nor that its terms were in the best interest of the Debtors' estates.[6]  *Id.* at 2-3.

On February 27, 2012, the Bankruptcy Court held a hearing on the Trustee's motion to approve the Settlement Agreement, during which the court heard argument from Cory and Northcutt, the Trustee, the Bennett Plaintiffs, and the United States Trustee.  The Trustee, the Bennett Plaintiffs, and the United States Trustee each argued that the court should approve the Settlement Agreement.  Counsel for the Trustee proffered several grounds why the agreement should be approved: (1) the Bennett Lawsuit, which involved securities violations against each of the three Debtors, could be fairly characterized as "complex litigation" such that the estates would likely have to "engage special counsel with expertise in defending security laws claims"; (2) defending the Bennett Lawsuit would "result in the incurrence of significant administrative expenses that may or may not be able to be paid"; (3) counsel for the Trustee had reviewed the Bennett Plaintiffs' claims and the defenses asserted by Cory and Northcutt, and "ha[d] serious concerns about the ultimate outcome of this litigation," believing "there [was] a significant chance that [the Bennett Plaintiffs] might prevail on one or more of those claims"; (4) if the settlement were not approved, "it would require a significant devotion of time and resources that otherwise could be

---

[6] The Court notes that despite framing their principal argument on appeal as whether the Trustee had the authority to consent to judgment against a Chapter 11 debtor, (*see* Docket No. 8, at 5), Appellants did not raise this issue in either their response to the Trustee's motion to schedule a hearing on his motion to approve the Settlement Agreement or in their detailed written objections, *see In re Mammoth Resource Partners, Inc.*, No. 10-11377, Docket Nos. 423; 430.  Rather, Appellants focused their objections entirely on whether the Settlement Agreement was fair and equitable, and whether the Trustee had shown it to be fair and equitable and in the best interest of the Debtors' estates.  *See id.*, Docket No. 430.

directed toward liquidation of the assets of the estate"; and (5) that "litigation of these claims would impose significant delay." *Id.* at 5-6. Counsel for the Trustee concluded by arguing:

> This settlement is virtually the same as any settlement that comes before this Court. It's a compromise of a disputed claim. It will avoid the incurrence of significant administrative expenses that the estate can't afford. It avoids the risk of an adverse result. It reduces the potential cut recovery by two-thirds. Simply put, it's a good deal for the estate and the creditors. Conversely, if the estate has to litigate these defenses, it's not going to add anything from an asset side to the estate, it will only drain the assets.

*Id.* at 8-9. The United States Trustee similarly stated: "[W]e believe it's a contentious, difficult case. The settlement as [counsel for the Trustee] pointed out, it's a good deal for the estate. We think it's a great deal for the estate and we think the Court should approve it." *Id.* at 37. Also during that hearing, the Bankruptcy Court examined counsel for the Bennett Plaintiffs on many of the legal and factual issues relative to the Settlement Agreement.

At the February 27 hearing, Bankruptcy Judge Joan Lloyd acknowledged that she accidentally signed the proposed order tendered by Cory and Northcutt that characterized the February 27 hearing as "preliminary":

> The problem is I signed the wrong order. I should have signed the order that said this was the final hearing. I don't know why [Cory and Northcutt] tendered an order that this was a preliminary hearing. But [they] did and I signed it . . . .
>
> . . . .
>
> I'm going to have to set this for a final hearing because I signed the wrong order. My fault.

> Two orders were tendered; one was a joint motion. And then [Cory and Northcutt] tendered a second one. And I don't know why I signed the wrong one. But I signed the one that said this was a preliminary hearing and so this is defective for purposes of getting to the final merits.

*See id.* at 41-42. Counsel for Cory and Northcutt proposed March 12 for the final hearing and told the court he would "prefer not to do it this week" because he wanted to talk to Cory. *Id.* at 44-45. Judge Lloyd rejected counsel's request to schedule the final hearing farther out, reiterating that Cory had "known about this for a long time," and that "nobody knows more about these debtor entities than Mr. Cory so that doesn't go too far with me." *Id.* at 46. After discussing counsel's respective scheduling conflicts, the court set a final hearing for March 2, 2012.

On February 29, Cory and Northcutt filed an expedited motion to continue the final hearing, *id.*, Docket No. 439, to which the Trustee and Bennett Plaintiffs filed an objection later that same day, *id.*, Docket No. 440. On March 1, the Bankruptcy Court denied Cory and Northcutt's motion for a continuance. *Id.*, Docket No. 441.

At the March 2 hearing, counsel for the Trustee again proffered to the Bankruptcy Court that he had reviewed the claims and defenses in the Bennett Lawsuit and "had serious concerns about the outcome of the litigation." *Id.*, Docket No. 507, at 6. He repeated that the Bennett Lawsuit was complex and would cause the Debtors' estates to incur significant costs to defend. *Id.* at 5. Counsel further stated that "[a] successful defense, best case, would only result in the occurrence of significant additional administrative expense." *Id.* at 6. And he proffered that the Settlement Agreement was in the interest of the estates, not only because it would "avoid the time,

expense and risk of this litigation," but also because the negotiated settlement was at a discount of twenty-five percent of the amounts claimed. Additionally, he stated that the settlement was favorable to the estates because only one-third of the claims would be allowed as general unsecured claims, whereas the remainder would be subordinated to general unsecured claims—thus, the estates would also avoid the expense of litigating the subordination issue. *Id.* at 6-7. Responding to Cory and Northcutt's assertion that additional discovery was needed, counsel for the Trustee argued: "Mr. Cory is a party to the litigation that we're trying to settle, so he knows as much about this case as anyone and doesn't need any such discovery. They haven't proffered any discovery." *Id.* at 8.

The Trustee also offered sworn testimony at the March 2 hearing. The Trustee testified that he believed the Settlement Agreement was "beneficial to the creditors and all the stakeholders of the estate." *Id.* at 20. He testified that he estimated the estates would spend $75,000 to $125,000 concluding the Bennett Lawsuit and that, based on his counsel's assessment of the claims and defenses, in his business judgment as trustee he believed the compromise was beneficial to the estates. *Id.* at 24-25, 35. Additionally, counsel for the Bennett Plaintiffs similarly discussed with the Bankruptcy Court the merits of the Bennett Lawsuit. *See id.* at 42-43.

At the conclusion of the March 2 hearing, Judge Lloyd issued her decision on the Trustee's motion to approve the Settlement Agreement. *Id.* at 46-51. She began by finding that, under Fed. R. Bankr. P. 9019, "There has been appropriate notice [and] opportunity to be heard." *Id.* at 46. Judge Lloyd next concluded that "the trustee has

sustained his burden under the formula set out by the Sixth Circuit." *Id.* at 48. Turning to the merits of the settlement, she found that the Trustee had informed himself of the claims and defenses in the Bennett Lawsuit and had "determined that that litigation can and should be settled on the terms negotiated with the Bennett plaintiffs." *Id.* Judge Lloyd stated that evidence had been tendered showing the settlement was reached by arm's-length negotiation and that there was no evidence to suggest "this has not been at arms length and appropriate negotiation and use of the Trustee's business judgment." *Id.* She concluded, stating: "The Court finds it's fair and equitable." *Id.*

While rendering her decision, Judge Lloyd also addressed the issue raised by Cory and Northcutt regarding the collateral effect on them had by the Settlement Agreement and Agreed Judgment. *See id.* Noting case law from other district courts in this Circuit, she concluded that the "collateral effect on other entities is not a relevant basis for this Court to deny approval of the settlement." *Id.* Judge Lloyd went on: "If this Court were governed by what might happen to other non-bankrupt entities that are part of this estate . . . then a court sitting in bankruptcy could never approve these settlements, because they always have collateral effect, both positive and negative on others." *Id.* at 49. She acknowledged taking into consideration the conflicting interests of the parties, Cory and Northcutt's objection, and the evidence tendered before concluding that "the overall effect of this is to benefit the estates." *Id.* Judge Lloyd expounded on her reasoning:

> Probability of success on the merits, the Court does remember the
> testimony from May. You know, it's hard to forget testimony. . . .
> I remember testimony and the Court believes that the probability

of success on the merits for the estate is quite possibly as best described as grim.

And in light of that, the Court believes that the trustee has made an appropriate decision to forgo expenditure of, between seventy-five and $125,000 in legal fees, which in this Court's opinion is probably dead on accurate, probably more on the nature of $125,000. So the probability of success on the merits in light of the savings to the estate is overwhelming.

. . . . So for all the reasons stated in the record, the Court has taken evidence. There has been more than enough notice and opportunity to be heard. The Court is going to enter an order approving the settlement.

*Id.* at 49-50.

The Trustee then filed the proposed Agreed Judgment in the bankruptcy adversary proceeding on March 7, 2012. *Bennett*, No. 10-1055, Docket No. 48. And on March 8, 2012, the Bankruptcy Court entered the Agreed Judgment. *Id.*, Docket No. 49. This appeal followed.

## STANDARD OF APPELLATE REVIEW

This Court has jurisdiction to hear this consolidated appeal from the Bankruptcy Court pursuant to 28 U.S.C. § 158(a)(1). When hearing an appeal from the final decision of a bankruptcy court, the district court sits as an appellate court. As an appellate court, this Court reviews the Bankruptcy Court's findings of fact for clear error and its conclusions of law *de novo*. *Nat'l Union Fire Ins. Co. v. VP Bldgs., Inc.*, 606 F.3d 835, 837 (6th Cir. 2010); *In re Mitan*, 573 F.3d 237, 241 (6th Cir. 2009). The Court reviews the Bankruptcy Court's approval of a settlement agreement for abuse of discretion. *In re MQVP*, 477 F. App'x 310, 312 (6th Cir. 2012). "Abuse of discretion" is defined as a "definite and firm conviction that the [bankruptcy court] committed a

clear error of judgment." *In re Hines*, 193 F. App'x 391, 393 (6th Cir. 2006) (alteration in original) (quoting *In re M.J. Waterman & Assocs., Inc.*, 227 F.3d 604, 607-08 (6th Cir. 2000)). "The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if reasonable persons could differ as to the issue, then there is no abuse of discretion." *Id.* (quoting *In re M.J. Waterman*, 227 F.3d at 608).

ISSUES ON APPEAL

Appellants present three issues on appeal:

I.      Whether the Trustee had the authority to enter into a settlement agreement on behalf of the Debtors that included as one of its provisions the entry of an agreed judgment against one of those Debtors in a pending adversary proceeding?

II.     Whether the Bankruptcy Court committed error in scheduling the hearing(s) on the Trustee's motion to approve the Settlement Agreement by failing to provide sufficient notice to Appellants?

III.    Whether the Bankruptcy Court properly apprised itself of the facts necessary to evaluate the proposed Settlement Agreement and made an informed judgment that the settlement was fair and equitable?

The Court will address each in turn.

DISCUSSION

**I.    The Trustee had the authority to enter into the Settlement Agreement that included as one of its provisions the Agreed Judgment against MRP.**

The primary issue on appeal is whether the Bankruptcy Court abused its discretion by approving the Settlement Agreement proposed by the Trustee.  "A trustee in bankruptcy has the authority to seek a settlement of claims available to the debtor, but any proposed settlement is subject to the approval of the bankruptcy court, which enjoys 'significant discretion.'"  *In re MQVP*, 477 F. App'x at 312 (citing Fed. R. Bankr. P. 9019; *In re Rankin*, 438 F. App'x 420, 426 (6th Cir. 2011)).  "The very purpose of such a compromise agreement is to allow the trustee and the creditors to avoid the expenses and burdens associated with litigating sharply contested and dubious claims."  *Id.* (internal quotation marks omitted) (quoting *In re Bard*, 49 F. App'x 528, 530 (6th Cir. 2002)).  "The law favors compromise and not litigation for its own sake." *In re Fishell*, 47 F.3d 1168, 1995 WL 66622, at *2 (6th Cir. 1995) (unpublished table decision) (quoting *In re A&C Props.*, 784 F.2d 1377, 1380-81 (9th Cir. 1986)); *In re MQVP*, 477 F. App'x at 312-13.

Still, when determining whether to approve a settlement agreement, the bankruptcy court may not "rubber stamp" the agreement or merely rely upon the trustee's word that the compromise is reasonable.  *In re MQVP*, 477 F. App'x at 313; *Reynolds v. C.I.R.*, 861 F.2d 469, 473 (6th Cir. 1988).  Instead, "the bankruptcy court is charged with an affirmative obligation to apprise itself of the underlying facts and to make an independent judgment as to whether the compromise is fair and equitable."  *In re MQVP*, 477 F. App'x at 313 (quoting *Reynolds*, 861 F.2d at 473).  In *Protective*

*Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, the Supreme Court outlined the general factors a bankruptcy judge should consider in determining whether a proposed settlement is "fair and equitable."  390 U.S. 414, 424-25 (1968). The Sixth Circuit, in *In re Bard*,[7] summarized how other federal courts had implemented those guidelines and distilled four distinct factors for bankruptcy courts to consider:

> (1) the probability of success in the litigation;
> (2) the difficulties, if any, to be encountered in the matter of collection;
> (3) the complexity of the litigation and the expense, inconvenience, and delay attendant to it; and
> (4) the paramount interest of creditors and proper deference to their reasonable views.

49 F. App'x at 530.  However, "[a] bankruptcy judge need not hold a mini-trial or write an extensive opinion every time [s]he approves or disapproves a settlement.  The judge need only apprise [her]self of the relevant facts and law so that [s]he can make an informed and intelligent decision, and set out the reasons for [her] decision."  *In re MQVP*, 477 F. App'x at 313 (first alteration in original) (quoting *In re Fishell*, 47 F.3d 1168, 1995 WL 66622, at *3).  "The judge may make either written or oral findings; form is not important, so long as the findings show the reviewing court that the judge properly exercised [her] discretion."  *In re Fishell*, 47 F.3d 1168, 1995 WL 66622, at *3 (quoting *In re Am. Corp.*, 841 F.2d 159, 163 (7th Cir. 1987)).  Finally, both bankruptcy and district courts in this Circuit "generally accord some deference to the trustee's

---

[7] Although *In re Bard* is an unpublished decision, the Sixth Circuit routinely applies its four-factor test for considering challenges to proposed settlement agreements in bankruptcy appeals.  *E.g.*, *In re MQVP*, 477 F. App'x at 313; *Lyndon Prop. Ins. Co. v. Katz*, 196 F. App'x 383, 387 (6th Cir. 2006); *cf. Bauer v. Commerce Union Bank*, 859 F.2d 438, 441 (6th Cir. 1988) (utilizing a three-part test similar to that later set out in *In re Bard*).

decision to settle a claim." *In re MQVP*, 477 F. App'x at 313 (referencing, *e.g.*, *In re Media Cent., Inc.*, 190 B.R. 316, 321 (E.D. Tenn. 1994); *In re Smithey*, 2011 WL 3102308, at *6-7 (Bankr. N.D. Ohio July 25, 2011)); *see also Bauer v. Commerce Union Bank, Clarksville, Tenn.*, 859 F.2d 438, 441 (6th Cir. 1988).

Appellants argue that the Bankruptcy Court abused its discretion because the Trustee lacked the authority to enter into the Settlement Agreement that contained as one of its provisions the Agreed Judgment against MRP.  Appellants contend that although the Trustee had the authority to settle claims against the bankruptcy estate, he had no authority to consent to a judgment against MRP.  Here they distinguish between paragraphs 1 and 2 of the Settlement Agreement, which provide in relevant part:

> 1. Each of the Bennett Plaintiffs shall have an allowed claim in a dollar amount that is seventy-five percent (75%) of the total amount of their claim with prejudgment interest accruing only through the petition date against MRP, [Mammoth Field Services, Inc.], and [Mammoth Resource, LLC] . . . .
> . . . .
> 2. The Trustee shall consent to entry of a judgment in favor of the Bennett Plaintiffs and against MRP for the sale of unregistered securities to the Bennett Plaintiffs . . . .  Upon entry of an order approving this Settlement Agreement, the Bennett Plaintiffs shall file the Agreed Judgment . . . in the Adversary Proceeding.

*In re Mammoth Resource Partners, Inc.*, No. 10-11377, Docket No. 415-1, at 3-4. Paragraph 1, Appellants reason, pertains to the proper authority of the Trustee to resolve claims against the bankruptcy estate; however, they maintain that paragraph 2 has nothing to do with the bankruptcy estate and goes beyond the Trustee's authority.  (*See* Docket No. 8, at 13.)  Appellants insist that paragraph 2: "does not deal with how the claimants are treated inside the bankruptcy proceedings, but only how they are treated outside the bankruptcy proceedings. . . . And in this particular case, paragraph 2 deals

with how Appellant Cory is treated outside the bankruptcy proceedings.  It adds nothing to the administration of the estate."  (Docket No. 8, at 14.)

The Court is unpersuaded, much as the Bankruptcy Court was, that the Trustee lacked the authority to enter into the Settlement Agreement, including the provision providing for an agreed judgment against MRP.  It is clear to the Court that Appellants' principal quarrel with the Trustee consenting to the Agreed Judgment against MRP is the potential collateral effect on Cory:  "The apparent purpose of paragraph 2 is to enable the Bennett Plaintiffs to recover a $5,962,550.42 judgment against Appellant Cory."  (Docket No. 8, at 15.)  Appellants insist that because MRP, under the terms of the Settlement Agreement and Agreed Judgment, would consent to judgment making MRP liable to the Bennett Plaintiffs under Ky. Rev. Stat. § 292.480(1), the Bennett Plaintiffs would need prove only that Cory was a "control person" under § 292.480(4) to obtain a judgment against Cory individually.  (Docket No. 8, at 15-17.)

The Bankruptcy Court concluded on the record that the potential collateral effect on Cory (and/or Northcutt) individually was not an appropriate basis to deny approval of the Settlement Agreement.  *In re Mammoth Resource Partners, Inc.*, No. 10-11377, Docket No. 507, at 48-49.  The record reflects that the bankruptcy judge relied in part on *Ames v. Rabin*, 2011 WL 1630139 (N.D. Ohio Apr. 29, 2011), in dismissing the potential collateral effect on Appellants.  Though not binding on this Court, *Ames*' reasoning does offer some guidance here.  In *Ames*, a bankruptcy trustee in an adversary proceeding moved for approval of a proposed settlement agreement among the debtor's estate and certain directors and officers of the debtor.  A creditor of the debtor objected to the settlement because it believed the terms of the settlement

might affect its ability to seek contribution from joint tortfeasors.  The district court overruled that objection, finding the creditor's concern was primarily an objection to state law, not the settlement agreement.  *Id.* at * 1-2.  The court in *Ames* reasoned that the creditor was "left in no worse a position now than if the case had proceeded to the merits and reached a judgment" and, upon concluding that the settlement was fair and reasonable and in the best interest of the estate, approved the settlement agreement.  *Id.* at *2-3.

Though neither controlling nor perfectly on point, the Court finds *Ames*' reasoning persuasive.  Much like the creditor in *Ames*, Appellants' argument here is really an objection to the effect of Kentucky state securities law rather than to the terms of the Settlement Agreement itself.  The Settlement Agreement and Agreed Judgment put Appellants in no worse position than had the Bennett Plaintiffs succeeded on the merits against MRP.  As Judge Lloyd concluded, "If [the Bankruptcy Court] were governed by what might happen to other non-bankrupt entities that are part of this estate . . . then a court sitting in bankruptcy could never approve settlements, because they always have collateral effect, both positive and negative on others."  *In re Mammoth Resource Partners, Inc.*, No. 10-1055, Docket No. 507, at 49.  Thus, the Court concludes that the Bankruptcy Court did not commit a clear error of judgment in rejecting the potential collateral effect on Appellants as appropriate grounds for denying approval of the Settlement Agreement.

Moreover, the Court is unpersuaded that, as a general matter, the Trustee exceeded his authority by consenting to the Agreed Judgment against MRP.  A bankruptcy trustee is charged with maximizing the estate's assets and, accordingly,

enjoys broad discretion in administering the bankruptcy estate.  This discretion extends to deciding whether settlement is preferable to litigation.  The record shows that the Trustee thoroughly considered the Bennett Plaintiffs' claims, the defenses available, the likelihood of successfully litigating those claims, and the potential cost and benefit to the estates in deciding the Settlement Agreement was fair and equitable and in the estates' best interest.  As a part of the arm's-length negotiations with the Bennett Plaintiffs, the Trustee determined that consent to the Agreed Judgment was necessary to realize the cost savings of resolving the disputes between the estates and the Bennett Plaintiffs, to mitigate the risk of litigating the claims against the estates, and also to dispose of the Bennett Plaintiffs' claims against the debtors.  As the Bankruptcy Court recognized:

> [The Trustee] in his fiduciary responsibility is charged only with protecting these estates.
>
> Now, ultimately he does have a fiduciary duty to all stakeholders, creditors, secured, unsecured stakeholders.  But that duty does not mean that he has to do what they want.  Mr. Cory and Mr. Northcutt lost their opportunity to direct these cases back in May.  And all [the Trustee] has to do is to honor the estate as a whole and honor his fiduciary duty to the estate as a whole.  Settling a case or a series of cases on terms that he deems on advice of counsel are advantageous to the overall estate and its creditors and stakeholders is sufficient for this Court to determine it's fair and equitable.

*Id.* at 49.  Thus, this Court cannot conclude that the Bankruptcy Court erred by rejecting Appellants' argument that the Trustee exceeded his authority in consenting to the Agreed Judgment against MRP.

II.     **The Bankruptcy Court did not err in scheduling the hearing on the Trustee's motion to approve the Settlement Agreement.**

Appellants' second issue on appeal is whether the Bankruptcy Court committed error (1) by scheduling the hearing on the motion to approve settlement without adequate notice and (2) by not granting them a continuance to conduct additional discovery.  Federal Rule of Bankruptcy Procedure 9019 states that "after notice and hearing, the court may approve a compromise or settlement."  Rule 9019 goes on to provide that notice shall be given in accordance with Rule 2002, which provides for twenty-one days' notice of the hearing on a motion to approve a compromise or settlement unless the court for cause shown directs otherwise.  *See* Fed. R. Bankr. P. 2002(a)(3).  11 U.S.C. § 102(1)(A) defines the phrase "after notice and a hearing," for purposes of Title 11, as "mean[ing] after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."  And Rule 9006(c)(1) states that "when an act is required or allowed to be done at or within a specific time by these rules or by notice given thereunder . . . the court for cause shown may in its discretion with or without motion or notice order the period reduced."  Although that Rule proceeds to expressly prohibit the reduction of time for taking action under an exhaustive list of other rules, it does not prohibit reduction under either Rule 9019 or Rule 2002(a)(3).  *See* Fed. R. Bankr. P. 9006(c)(2).  Thus, despite that Rule 2002(a)(3) provides for twenty-one days' notice of a hearing on a motion to approve settlement, the Court reads that rule in conjunction with 11 U.S.C. § 102(1)(A) and Rule 9006(c) as permitting the Bankruptcy Court some degree of

flexibility in scheduling such a hearing and some discretion in determining whether notice has been adequately given.[8]

Here, the Trustee filed his motion to approve the Settlement Agreement on January 26, 2012. *In re Mammoth Resource Partners, Inc.*, No. 10-1055, Docket No. 415. The Bankruptcy Court entered a notice setting a deadline for objections twenty-one days later on February 21. *Id.*, Docket No. 417. Then on February 5, having been informed that Cory and Northcutt planned to object to the Settlement Agreement, the Trustee and the Bennett Plaintiffs filed a joint motion requesting the Bankruptcy Court schedule a hearing on the motion for February 27. *Id.*, Docket No. 422. The Trustee, joined by the Bennett Plaintiffs, requested a hearing on February 27 so that the court could rule on that motion in advance of the hearing on the Trustee's motion for substantive consolidation, which was originally scheduled for February 27 but continued to March 26. *See id.*; *see also id.*, Docket Nos. 421; 425. Cory and Northcutt objected to setting the hearing on the motion to approve settlement on February 27, arguing they needed additional time for discovery and requesting that if the court set a hearing for February 27 it be a preliminary hearing. *Id.*, Docket No. 423.

The Bankruptcy Court ruled on these motions on February 7 and entered an order scheduling a preliminary hearing on February 27, twenty days later. *Id.*, Docket No. 427. At the February 27 hearing, Judge Lloyd acknowledged that she accidentally signed Cory and Northcutt's proposed order referring to the February 27 hearing as

---

[8] Other courts similarly have read Rule 2002(a)(3)'s notice requirement as neither absolute nor mandatory. *See, e.g.*, *In re Thompson*, 965 F.2d 1136, 1140-41 n.5 (1st Cir. 1992); *In re Triple E Transp., Inc.*, 169 B.R. 368, 373 (Bankr. E.D. La. 1994); *In re Stumpff*, 109 B.R. 1014, 1017 (Bankr. E.D. Okla. 1989); *In re Glinz*, 66 B.R. 88, 91 (D.N.D. 1986); *In re Patel*, 43 B.R. 500, 503-04 (N.D. Ill. 1984).

"preliminary."  *See id.*, Docket No. 506, at 41-42.  Counsel for Cory and Northcutt proposed March 12 for a final hearing but requested that the final hearing be scheduled even farther out because he wanted to talk to Cory.  *Id.* at 44-45.  Judge Lloyd rejected that request, reasoning that Cory had "known about this for a long time," and that "nobody knows more about these debtor entities than Mr. Cory."  *Id.* at 46.  The court also took into consideration the pending deadline to object to consolidation and the fact that the Bennett Plaintiffs' objection to consolidation would be resolved by the terms of the Settlement Agreement.  *Id.* at 43.

The Bankruptcy Court also considered and addressed Cory and Northcutt's argument that additional discovery was needed regarding the exchange of offers of compromise between the Trustee and the Bennett Plaintiffs and the advice the Trustee received from counsel relative to the merits of the Bennett Plaintiffs' claims.  Cory and Northcutt also requested the opportunity to depose the Trustee about the settlement negotiations.  The Bankruptcy Court effectively dismissed these arguments, advising Cory and Northcutt that they could file a motion under Fed. R. Bankr. P. 2004 but that inquiry into the settlement negotiations and advice of counsel was prohibited under both the Federal Rules of Evidence and the Bankruptcy Rules.  *See id.* at 47-48.  (Judge Lloyd further noted that if Cory and Northcutt were unable to depose the Trustee before the March 2 hearing, they would nonetheless be able to examine him under oath at that hearing.  *Id.* at 57.)

After that hearing was held on February 27, Cory and Northcutt filed an expedited motion on February 29 to continue the final hearing scheduled for March 2.

*Id.*, Docket No. 439.  On March 1, the Bankruptcy Court denied Cory and Northcutt's motion for a continuance.  *Id.*, Docket No. 441.

Based on its review of the record and proceedings below, this Court is satisfied that the Bankruptcy Court showed good cause for scheduling the preliminary hearing twenty days after the entry of its scheduling order (a mere one day less than provided in Rule 2002) and for scheduling the final hearing four days thereafter.  The February 27 hearing was held twenty-eight days after the court entered its notice for objections to the Trustee's motion to approve the Settlement Agreement.  Judge Lloyd dealt with Cory and Northcutt's contentions that additional time was needed for discovery[9]  and also expressly determined multiple times on the record that there had been adequate notice and an opportunity to be heard.  *Id.*, Docket No. 507, at 46, 49.  Thus, the Court concludes that Rule 2002(a)(3)'s notice and opportunity-to-be-heard requirements were fulfilled and that the Bankruptcy Court showed good cause for reducing the notice period.

**III.   The Bankruptcy Court properly apprised itself of the facts necessary to evaluate the proposed Settlement Agreement and made an informed judgment that the settlement was fair and equitable.**

Appellants' final argument challenges the Bankruptcy Court as failing to apprise itself of the underlying facts and failing to make an independent judgment whether the Settlement Agreement was fair and equitable.  (Docket No. 8, at 19.)  Appellants base this argument on two contentions: (1) that the Trustee put forward no evidence why the

---

[9] Notably, despite requesting additional time to depose the Trustee and being advised by Judge Lloyd that they could file a Rule 2004 motion, Appellants did not file such a motion nor proffered any discovery.  *See id.*, Docket No. 507, at 8.

Debtors' estates would benefit from the Settlement Agreement, and (2) that the Trustee had not "appraised [sic] himself of the underlying facts, but was relying solely on the advice of counsel."  (Docket No. 8, at 19.)  Both of these arguments are belied by the record below.

The Court's review of the Bankruptcy Court's proceedings on February 27 and March 2, 2012, unquestionably shows that both the Trustee and the Bankruptcy Court were well informed of the facts relative to the Bennett Lawsuit and the proposed settlement.   The transcripts of those proceedings also show that the Trustee demonstrated to the court why the Settlement Agreement was beneficial to the estates. Finally, the record clearly reflects that the Bankruptcy Court properly apprised itself of the facts necessary to evaluate the settlement and made an informed and independent judgment that the proposed compromise was fair and equitable, thereby complying with this Circuit's standard for approving such a settlement agreement.  *See In re Bard*, 49 F. App'x at 530.  Therefore, the Court concludes that the Bankruptcy Court did not err in this regard.

CONCLUSION

For these reasons, the Bankruptcy Court's order approving the Settlement Agreement in Case No. 10-11377, Docket No. 444, and entry of the Agreed Judgment in adversary proceeding No. 10-1055, Docket No. 49, are hereby AFFIRMED.

Date:

cc:       Counsel